IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-98-135 |
| | § | CIVIL ACTION NO. H-08-3513 |
| EVER CAICEDO, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Ever Caicedo's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 14),[1] the United States' Answer (Document No. 22) and Motion to Dismiss (Document No. 21), and Movant's Reply to the Government's Motion to Dismiss (Document No. 25). After reviewing Movant's § 2255 Motion and Reply, the Government's Answer and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 21) be GRANTED, that Movant's Motion to Vacate, Set Aside, or Correct Sentence (Document No.14) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

---

[1] Ever Caicedo's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-08-3513 and at Document No. 14 in Criminal Action No. H-98-135. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.       **Procedural History**

Movant Ever Caicedo ("Caicedo"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Caicedo's first attempt at § 2255 relief.

On October 11, 1991, Caicedo was charged by Indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, 841(a)(1), and (b)(1)(A), in the United States District Court for the District of Colorado in *United States v. Ever Caicedo*, 91-Cr-355. He subsequently pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) and aiding and abetting in violation of 18 U.S.C. § 2 and was sentenced on March 25, 1992, by Judge Carrigan to a term of imprisonment of 51 months, to be followed by a five year term of supervised release. Thereafter, because the Government moved for a downward departure under Rule 35 based on Caicedo's substantial assistance, an order was entered to reflect Caicedo's new sentence of 25 months imprisonment. (Document No. 1). On April 8, 1998, the case was transferred to the Southern District of Texas, Houston Division. (Document No. 1). On July 29, 1998, a Probation Officer filed a Petition for Warrant or Summons for Offender Under Supervision, in which he requested that Caicedo's supervised release be revoked based on a law violation, namely, that Caicedo had been charged by Indictment with drug trafficking activities:

> On June 5, 1998, Caicedo was arrested by agents of the Drug Enforcement Administration and charged with possession of cocaine. Caicedo was subsequently indicted by a federal grand jury and charged with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and money laundering. The case is

docketed as Cr. No. H-98-210-S-004, and is pending before United States District Judge Kenneth M. Hoyt.  (Document No. 2).[2]

According to the Petition, Caicedo's supervision started on July 30, 1993.  (Document No. 2).  A final revocation hearing was held on May 6, 1999.  (Document No. 9, Transcript of final Revocation Hearing, Document No. 19).  Caicedo's term of supervised release was revoked and he was sentenced to a term of imprisonment of 18 months, that was to be served consecutive to the 151 month sentence previously imposed by Judge Hoyt in Criminal Action No. H-98-210.  (Document No. 9, Transcript of Hearing, Document No. 19, p. 24).  The Judgment For Revocation was entered on May 19, 1999.  (Document No. 11).   The docket sheet reveals that no direct appeal was taken by Caicedo.  Because no direct appeal was taken, his conviction became final for purposes of

§ 2255(1) on June 3, 1999, the last day on which he could have appealed the judgment to the Fifth Circuit Court of Appeals.  *See* Fed.R.App. 4(b)(1)(A) (notice of appeal must be filed ten days after judgment being entered); *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1987) (" By ` final,'  we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008) (" when a federal prisoner fails to file a notice of appeal from his conviction (in other words, when he fails to pursue the direct appeal process), the conviction becomes final for purposes of § 2255 upon the

---

[2] The docket sheet in Judge Hoyt's case, H-98-CR-210, shows that Caicedo, pursuant to a written Plea Agreement, pleaded guilty to Count one.  (Document No. 201, 202).  On March 22, 1999, Caicedo was sentenced to 151 months imprisonment, to be followed by a five year term of supervised release.  (Document No. 293).  Judgment was entered on March 26, 1999.  (Document No. 298).   On March 21, 2000, Caicedo filed a § 2255 motion in that case (Document No. 343), which was dismissed as time barred.  (Document No. 344, 350, 351).

expiration of the 10-day period for filing a direct appeal."). The one-year limitation period began to run on June 3, 1999, the day his conviction became final, and expired on June 3, 2000.

A § 2255 motion is deemed filed at the time it is delivered to prison officials for mailing. *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998)). Here, Caicedo signed his § 2255 motion on November 24, 2008, and the motion was received and filed on November 26, 2008, more than eight years and five months after the expiration of the one-year limitations period. Under these circumstances, Caicedo's motion is untimely under § 2255(f)(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(f)(4) or that equitable tolling should apply

In his § 2255 motion, Caicedo argues that the 18 month term of imprisonment imposed on the revocation of his supervised release should be set aside because his attorney failed to show that Caicedo was not aware that he was still subject to conditions of supervised release when he returned to the United States. According to Caicedo, he was under the impression that his supervised release term ended when his original term of imprisonment was reduced to twenty-five months after the Court granted his Rule 35 Motion and he was released from confinement in July 1993 and subsequently deported to Colombia. Caicedo contends that because he was not on supervised release at the time he committed the drug trafficking activities charged in H-98-Cr-210, his supervised release could not be revoked. The Government has answered and has moved to dismiss the instant action as time-barred. (Document No. 21 & 22). The Government further argues that even assuming that Caicedo had timely filed his § 2255 motion, he nevertheless is not entitled to relief, because he clearly was on supervised release at the time he was indicted in the United States District Court for the

4

Southern District of Texas, Houston Division, and that the reduction of his sentence under Rule 35 did not nullify his original term of supervised release.   This § 2255 proceeding is ripe for ruling.

## II. Discussion

### A. Caicedo's  § 2255 motion is time-barred

The United States argues that Caicedo's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because it is time-barred.  On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted.  With the enactment of AEDPA, 28 U.S.C. § 2255(f) now specifically provides for a one-year statute of limitations:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of–
>
> (1)    the date on which the judgment of conviction becomes final;
>
> (2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Here, because Caicedo's conviction became final on or about June 3, 1999, he had until June 3, 2000, to file a § 2255 motion.  The docket sheet shows that Caicedo filed his § 2255 motion on November 26, 2008, more than eight years after the expiration of the limitations deadline.  Under

these circumstances, Caicedo's motion is untimely under § 2255(f)(1), and is subject to dismissal absent a showing that an alternate date for commencement of the limitations period should be applied under § 2255(f)(2)-(f)(4), or that the limitations period should be equitably tolled.

None of the alternate provisions for the commencement of the limitations period applies. Caicedo's § 2255 motion cannot be considered timely under 2255(f)(4) because Caicedo has not, and cannot, allege that the facts underlying his claims could not have been discovered through the exercise of due diligence by the time his conviction became final.  Further, Caicedo's motion cannot be considered timely under § 2255(f)(2) because Caicedo has not alleged that he was in any way impeded from filing a timely § 2255 motion.  Finally, Caicedo's § 2255 motion cannot be considered timely under § 2255(f)(3) because Caicedo's claims are not based on a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

Further, upon this record, equitable tolling is not available.  Rare and exceptional circumstances may warrant the application of equitable tolling principles to a late filed § 2255 motion to vacate, set aside or correct sentence.  *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002), *cert.* denied, 539 U.S. 952 (2003) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (1998)); United *States v. Patterson,* 211 F.3d 927 (5th Cir. 2000).  Equitable tolling, however, is not available if the petitioner does not act diligently in attempting to meet the one year limitations deadline.  *Coleman v. Johnson,* 184 F.3d 398, 403 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057 (2000).  In addition, the Fifth Circuit has approved of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'"  *Fierro v. Cockrell,* 294 F.3d 674, 682 (5th Cir. 2002) (quoting *Coleman,* 184 F.3d at 402); *See also  Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1999),

*cert. denied*, 526 U.S. 1074 (1999) (Inconsistent ruling by the district court constituted exceptional circumstances which warranted the application of equitable tolling principles); *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000) (Rare and exceptional circumstances existed to warrant equitable tolling where the Movant was under mistaken impression as to filing deadline, where that mistaken impression was furthered by the District Court); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (remanding case for rehearing on equitable tolling where the petitioner alleged "he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf"). In contrast, the Fifth Circuit has disapproved of the application of equitable tolling for ignorance of the law, pro se status alone, lack of legal training  or for circumstances which are "garden variety claims of excusable neglect." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999); *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir.), *cert denied*, 531 U.S. 1035 (2000); *Lockingbill v. Cockrell,* 293 F.3d 256, 265 (5th Cir.  2002).  Likewise, the Fifth Circuit has held that because a prisoner has no right to counsel during a post conviction proceeding, mere attorney error or neglect does not trigger the application of equitable tolling.  *Riggs,* 314 F.3d at 299.  The movant bears the burden of establishing equitable tolling.  *United States v. Petty*, 530 F.3d 361 (5th Cir. 2008).  The Movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way of timely filing his § 2255 motion. *Lawrence v. Florida*, ___U.S.___,127 S.Ct. 1079, 1085 (2007).

Here, Caicedo has provided no basis for equitable tolling of the statutory period of limitations. None of the grounds asserted by Caicedo entitle him to relief.  Given the absence of any facts in the record that would constitute a rare or exceptional circumstance, equitable tolling of the limitations period is not available.  Accordingly, Caicedo's § 2255 is time-barred.

Here, Caicedo, in response to the Government's Motion to Dismiss as time barred, contends that he has been diligent in pursuing his claims.  According to Caicedo, he was not present at his re-sentencing hearing in May 1993 and until he received a copy of his Judgment and Commitment Order on or about August 12, 2008, he was not aware that his original term of supervised release remained in full force and effect.  Caicedo claims that he was never warned about the consequences of returning to the United States while on supervised release and suggests that had he known, he would not have returned. Caicedo maintains that it was the responsibility of the Probation Office and Government to contact him and enforce his supervision, not his.  Caicedo contends that his counsel at the revocation hearing was ineffective because he failed to contest whether Caicedo was on supervised release.  In sum, Caicedo writes:

> Petitioner is 47 years old, diabetic, who has lost his mother and father while serving this sentence, and who has been also diagnosed with high blood pressure, high cholesterol, had eye surgery due to a violent assault he suffered while in a BOP facility when some of his fellows there learned about Petitioner's previous work as a C.I. for the government.  Furthermore, Petitioner's family in Houston also knew about Petitioner's activities as C.I. and they may be witnesses of the job he made for the government, to the point that even his wife was also a C.I. for the same Mr. Gutierrez in Houston.

> Finally, Petitioner is also facing a detainer from the BICE agency which could remove Petitioner to Colombia where Petitioner will be facing death threats from many of the criminal organizations he denounced while working as a C.I.  Petitioner's wife, Jazmin Rosas, his friend Patricia Gonzalez, may corroborate Petitioner's assertions in regard to his activities as a C.I.  Petitioner's brother-in-law, Edgar Jaramillo was killed in Colombia about 4 years ago when he was gathering information for the D.E.A. about drug dealing activities taking place in that country.  Petitioner moved this Honorable Court, at this time, for a fair review of this claim and to prevent his killing if deported to Colombia.  Petitioner prays that the instant sentence for the alleged violation of his supervised release be revoked and the case be immediately dismissed. (Document No. 14, pp. 43-44).

The transcript of Caicedo's May 6, 1999, revocation hearing shows that Caicedo was aware of factual basis of his claims, namely he was aware that he had been on supervised release since 1993, and that the Rule 35 reduction of his original sentence had not affected his supervised release term, which had remained in effect:

> Mr. Barnett:  Your Honor, one thing I wanted to let the Court know.  He received an original sentence of 51 months and five years supervised release.  Under a Rule 35, that was later reduced to 25 months.  Mr. Caicedo was not present for a hearing on that.  He received paperwork in jail and there was no mention of supervised release in the sentence reduction, and it's his position that he was not on supervised release when ultimately released from a 25-month sentence, and that's – that's what – he's not pleading true to being on supervised release when ultimately released from the Colorado sentence.

> The Court:  Okay.  Well, I think that these Rule 35's go only to the release or reduction of the actual sentence of incarceration and wouldn't affect any of the other parts of the judgment, which cover a variety of things, including the supervised release.

> To that extent, I'm going to overrule any motion or objection he's making to that and simply ask Mr. Caicedo if he pleads true or not true to the allegation that he was in fact convicted of conspiracy to possess with intent to distribute cocaine and was sentenced by Judge Hoyt back in March.  Is that right, or am I wrong about that?

> Ms. Vara: No, your Honor, you're right, your Honor.

> Probation Officer Gerlich:  What the gentleman says here is correct, the sentence was reduced.  After his release from confinement, which was July of '93, he was in fact deported to Colombia.  He was then brought back into the country and continued working as an informant.  What happened at that point was that our agency loses contact, if you will, because of the deportation.  Mr. Caicedo at that point should have followed instructions he received earlier to report then to the nearest probation office, if you will.  That did not happen.  We received our information from the District of Colorado and the FBI that, in fact, he was here in Houston, and at that point the series on violations that occurred, and thus my involvement in the case.

> The Court:  So I'm just going to make a finding right now that Mr. Caicedo, at the time he was arrested for this conspiracy to possess with intention to distribute cocaine and subsequently convicted of, that at the time he was arrested, he was in fact on supervised release.

So the question again, do you plead true or not true to the fact that you were convicted of conspiracy to possess with intent to distribute cocaine during this period of supervised release that I have just found you were under?

Defendant Caicedo:  Really, I was not supervised. I was not supervised.

The Court:  I understand you insist that, but do you agree with the allegation that you were convicted of conspiracy to possess with intent to distribute cocaine?

Defendant Caicedo:  Yes, yes, I was convicted.

The Court:  Do you feel that I need to conduct any further evidentiary hearing on this matter?  Do we need to prove he was under supervised release?  What is your position, Ms. Vara?

Ms. Vara;  I think the Court is absolutely correct in that the judgment that was afforded initially does set forth conditions of release.  As you well know, it's the practice of the district court judges in this district, as well as other districts across the nation, to explain the conditions of release at the time of sentencing.  So I feel very confident that if I offered the copy of the judgment and sentence — excuse me, the judgment and conviction from the Colorado District, as well as from our district, that the evidence would be sufficient for the Court to make its finding.  But if you want me to put on Mr. Gerlich or if you want to go with what he's just told you—

The Court:  I would like to really make this not be any ambiguity about of this.  If you would just offer your evidence and put on Mr. Gerlich for just a few moments, maybe we can get a clear record on this.

Ms. Vara:  For the purpose of this hearing, your Honor, I would offer Government's Exhibit No. 1, which is a judgment and conviction for Ever Caicedo in Cause No. 98-210 out of the Southern District of Texas, and Government's Exhibit 2 is a judgment out of the District of Colorado in their Cause No. 91-CR-355, and I tender those to Mr. Barnett for his inspection.  I believe I've also previously given Mr. Barnett a Notice of Enhancement that's been filed in the 98-210 Houston case  number, the judgment out of the District of Colorado.

                    *                                        *

Ms. Vara:  Would you state your name, please.

Mr. Gerlich:  Mark Gerlich.

Ms. Vara:  Where do you work?

10

Mr.Gerlich:  With the United States Probation Office in Houston.

Ms. Var:  How long have you worked in that position?

Mr. Gerlich:  25 years.

Ms. Vara:   And what is your exact title there?

Mr. Gerlich:  I am a senior officer assigned to field services.

Ms. Vara:  Is that the position you've held for the entire 25 years, or have you done other things with the Probation Department?

Mr. Gerlich:  I have been involved in PSI work in addition to field services.

Ms. Vara:  Have you on few or many occasions been in district court at the time of an individual sentencing hearing in the Southern District of Texas?

Mr. Gerlich:  Many.

Ms. Var:  That is the only place you've worked for Probation; correct?

Mr. Gerlich:  Correct.

Ms. Vara:   Do you, as part of your responsibility at the present time, accept supervision of offenders who are placed on supervised release after a term of imprisonment that comes from other districts in the United States?

Mr. Gerlich:  Correct.

Ms. Vara:  Did you, in fact, receive a file concerning Ever Caicedo, a referral, if you will, from the District of Colorado?

Mr. Gerlich:  We did.

Ms. Vara:  When did you receive that?

Mr. Gerlich:  That file was received by us during the mid-months of 1998.

Ms. Vara:  Did you personally ever see Ever Caicedo after receiving that referral of supervision for Ever Caicedo?

Mr. Gerlich: I did not. The file was referred to me simply as a matter of monitoring allegations of new violations.

Ms. Vara: So I understand the sequence of events, by the time that you received the file and it became a supervision case here in the Houston area, Mr. Caicedo had already been arrested on June 5th of 1998 for the drug conspiracy?

Mr. Gerlich: Correct. If I might add, though, we had — became knowledgeable of his presence here and I have discussed on several occasions issues relating to his case with a controlling agent with the FBI.

Ms. Vara: When did you become aware then that he was here in the Houston area?

Mr. Gerlich: That came to our office's attention during the early '98.

Ms. Vara: In early 1998, then, how is it that you eventually came to talk with the controlling agent?

Mr. Gerlich: That came through another officer in our department who had been signed the responsibility of looking into allegations of violations at a state level.

Ms. Vara: Who did you actually talk with that you described as a controlling agent?

Mr. Gerlich: A gentleman by the name of Gutierrez.

Ms. Vara: With what agency is Mr. Gutierrez associated?

Mr. Gerlich: FBI.

Ms. Vara: Is that FBI in Houston?

Mr. Gerlich: Yes, it is.

Ms. Vara: Did Mr. Gutierrez tell you anything about Ever Caicedo and his association with Ever Caicedo?

Mr. Gerlich: Other than he was working as a confidential informant and the Bureau was aware of the fact that he was under a term of supervised release because they had received permission from the original court of jurisdiction to utilize him in that manner.

Ms. Vara:  I was going to ask you that, and I appreciate you offering it because that was my next line of questions, as to whether judicial authority had been granted for Mr. Caicedo to actually work as an informant.

Mr. Gerlich:  It had.

Ms. Vara:  Mr. Gutierrez acknowledged to you that he was aware from Mr. Caicedo or other sources that Mr. Caicedo was under supervised release?

Mr. Gerlich:  It would be under my understanding both from the defendant and from our office in Colorado, in Denver.

Ms. Vara:  Now, with respect, then, to these other violations that you came to talk to Mr. Gutierrez about, what were those specific violations that you're referring to?

Mr. Gerlich:  Those were issues, as I understand — we did not allege them again as part of our petition.  There was an assault issue in the country and I would have to make a — refer back to the PSI that was conducted in Judge Hoyt's case for the particulars, but there were, I think, two, maybe three, state violations.

*                              *

Ms. Vara: I'm showing you the Pre-Sentence Report in H-98-210, United States v. Ever Caicedo. Could you take a moment and look at that to refresh your memory as to the particulars of the offenses that you and Mr. Gutierrez discussed relative to Mr. Caicedo's violations while on supervised release.

*                              *

Ms. Vara:  The assault that you were talking about, does the PSR list a date for the assault that was charged against Mr. Caicedo in Harris County Criminal Court at Law No. 15?

Mr. Gerlich:  That was May of '96.

Ms. Vara:  Does it show a conviction pursuant to the investigation done by your office?

Mr. Gerlich:  That shows a sentence of six months probation and a $100 fine.

Ms. Vara:  Would that have been May 29th of 1996?

Mr. Gerlich:  Correct.

13

Ms. Vara:  Does the PSR also reflect another arrest that Mr. Gutierrez talked to you about in early 1998?

Mr. Gerlich:  There was an arrest of May 20, 1997, again in Harris County, for tampering with Government records, resulting in a sentence on August 8, '97 of two days custody, $30 fine.

Then there was a separate issue of an assault during June of '97, resulting in a one-year custody sentence and a $4,000 fine, and that —

Ms. Vara:  Date of conviction on that?

Mr. Gerlich:  September 9 of '98.

Ms. Vara:  Were you aware of these particular arrests before Mr. Gutierrez talked with you in the early part of 1998?

Mr. Gerlich:  I was personally not aware of it.

Ms. Vara:  Do you see the person in the courtroom that's been referred to as Ever Caicedo and for whom the supervision was transferred from the District of Colorado to Houston?

Mr. Gerlich?  Yes, ma'am.

Ms. Vara:  Would you point him out and describe what he's wearing so the record is clear?

Mr. Gerlich?  The gentleman in the blue shirt with headphones sitting next to the defense attorney–mustache.

Ms. Vara:  May the record reflect he's identified Ever Caicedo?

The Court:  The record will so reflect.

Ms. Vara:  When Mr. Caicedo was originally sentenced — in 1992, was it?

Mr. Gerlich:  I believe.

Ms. Vara:  —do you have any records in your file that indicate he was assessed a term of supervised release?

Mr. Gerlich:  Correct.

Ms. Vara:  What would those records be?

Mr. Gerlich:  We have a certified copy of the judgment and sentence, which did delineate the item of supervised release.

Ms. Vara:  What term of supervised release was Mr. Caicedo given?

Mr. Gerlich?  Five years.

Ms. Vara:  Was there any enumeration of specific conditions that Mr. Caicedo was to abide by under those five years of supervised release?

Mr. Gerlich:  As I recall, there are the standard 13 conditions, I believe.

Ms. Vara:  Those are actually physically printed on a copy of the J&C; correct?

Mr. Gerlich:  Yes.

Ms. Vara:  Has it been your experience that, as a matter of routine or habit or custom, the district court would read to the individual who's being sentenced, at the time of the sentencing, what the conditions of supervised release specifically are and what the term, the number of years of supervised release are?

Mr. Gerlich: That is correct.

Ms. Vara: Do you have any reason to believe from your file and from the referral that you've received from Colorado that that was not done in this instance regarding Mr. Caicedo?

Mr. Gerlich:  No.

Ms. Vara:  And, in fact, do you have any other evidence to share with the Court concerning Mr. Caicedo's knowledge that he was in fact on supervised release, other than what you've articulated?

Mr. Gerlich:  No, I do not.

*                                        *

The Court:  Tell me again, when was his release from prison in Colorado?

Mr. Gerlich:  Our records show, I believe, it's July 30th of '93.  I'd have to go back further in the file.  That is a date we're using as would have been a start date of the

15

term of supervised release, and its reflected that he was deported or at least turned over to I.N.S. as of that date.

The Court:  Okay.  So when was the allegation he committed the crime in Judge Hoyt's — that he was in Judge Hoyt's court for?

Mr. Gerlich:  I believe that was — again, it's in my file, but I believe that was in June. We received word June 5th, I believe it was, of '98, about the arrest, and started our process as of that time for a transfer of jurisdiction of the case.  Termination dates and such would have been offset by any period that he was in fact out of the country and not under our supervision.

The Court:  That's by law?

Mr.Gerlich:  Correct.

The Court:  Okay.  I just want to be sure that the dates match up.

Mr. Gerlich:  Still within the time frame.

The Court:  And how long was he out of the country?

Mr. Gerlich:  That I do not know, Judge.  We do not know when he was actually brought back into the courtroom by whomever.

                      *                   *

Mr. Barnett:  Mr. Gerlich, you received the original judgment from Colorado, correct?

Mr. Gerlich:  Right, yes, sir.

Mr. Barnett:  And that has a 51 month sentence?

Mr. Gerlich:  It does.

Mr. Barnett:  With a five-year supervised release?

Mr. Gerlich:  Correct.

                      *                   *

Mr. Barnett:  Looking further into your records, it's become clear to you that the sentence was reduced under Rule 35 to 25 months?

Mr. Gerlich: 25 months, correct.

Mr. Barnett:  And there is no mention in that paperwork anything about supervised release, is there?

Mr. Gerlich:  No, sir.

Mr. Barnett:  And you've never worked in the Colorado area, have you?

Mr. Gerlich:  No, sir, I have not.

Mr. Barnett: You don't have – nothing in that paperwork says the supervised release remains the same, does it?

Mr. Gerlich: No, sir, it does not address the supervised release.

Mr. Barnett:  You're going by what you know that the policy is in this district?

Mr. Gerlich:  Correct.

Mr. Barnett:  So, if there was an order signed by the judge in Colorado saying the sentence is reduced to 25 months, with no supervised release, you wouldn't know about that, would you?

Mr. Gerlich:  No, I would not, sir.

Mr. Barnett:  You know — somehow you came to know that Mr. Caicedo was deported?

Mr. Gerlich:  It is part of our file material.  It makes reference in a chronological entry that records available through the Colorado office did show that upon release from confinement, he was deported.

Mr. Barnett:  And you've also heard that through hearsay from other people, haven't you?

Mr. Gerlich:  No, testimony is based strictly on documentation from our files.

Mr. Barnett:  You've spoken with FBI Agent Gutierrez?

Mr. Gerlich:  Uh-huh.

Mr. Barnett:  And that's how you learned that Mr. Caicedo was working as an informant for the FBI?

Mr. Gerlich:  In Houston, yes, sir.

Mr. Barnett:  Were you aware that the Government contacted Mr. Caicedo in Colombia and requested him to work as an informant here?

Mr. Gerlich:  I was not personally aware of that.  Those arrangements were made through — as much input as we would have needed as an agency, that came through our office in Denver, sir.

*                                        *

Ms. Vara:  Mr. Gerlich, if the modification of Mr. Caicedo's sentence under the provisions of 5K1.1 and 18 U.S.C. 3553 deleted the supervised release provision, would you have gotten a referral from the District of Colorado to do supervised release?

Mr. Gerlich:  Certainly not.

Ms. Vara:  Is there anything in your file that indicates that, in fact, supervised release was deleted from the sentence once that modification of the original sentence was granted?

Mr. Gerlich: Nothing to so indicate.

Ms. Vara:  And you've been in court, done PSRs, seen people get 5ks in this district, have you not, over your 25 years?

Mr. Gerlich:  Correct.

Ms. Vara:  Have you become aware of the fact that 5K motions do not modify anything but the term of imprisonment?

Mr. Gerlich: That's correct.

Ms. Vara:  And you also were aware that Mr. Gutierrez, at the time that he committed the offense alleged in the petition, he was working for the FBI as an informant; correct?

18

Mr. Gerlich:  Mr. Caicedo, yes.

Ms. Vara:  Were you aware of the fact that Mr. Caicedo was connected to Antonio Nunez in May of 1998?

Mr. Gerlich:  Did not get any of the particulars of that, about the new case, allegations in the new criminal conduct.

Ms. Vara:  That's all I have.

Mr. Barnett:  Nothing further, your Honor.

The Court:  All right.  I find that at the time Mr. Caicedo committed the offense, that he was convicted in Judge Hoyt's court and sentenced on March 22, 1999, and the judgment was signed on March 25th, 1999; that Mr. Caicedo was on supervised release for a conviction that he had received in the District of Colorado, the March 25th, 1992; the judgment was signed March 30, 1992; and that he violated his conditions of supervised release by engaging in the behavior that resulted in that conviction in March of 1999.

The statute requires me to revoke supervised release if the defendant is guilty of a Class A violation.  So I hereby revoke supervised release in the case out of Colorado and say that the statutory maximum term of imprisonment allowable was three years, the Criminal History Category from the Pre-Sentence Report was a 1, which gives a Chapter 7 Guideline of imprisonment of 12 to 18 months.  All I have to do is consider that.  I don't have to follow that, unlike the Sentencing Guidelines.  But that gives us some framework in which to talk about what kind of sentence should be imposed.

Mr. Barnett: Your Honor, I would ask that the Court consider the bottom, that the Court do use this as a framework of the Guidelines and the Court give a 12-month sentence to Mr. Caicedo.  The reasons I would point out to the Court are, frankly, what we've been over before.  He was deported to [Columbia] after cooperating, after getting a sentence reduction.  He then was brought back.  He was contacted by the United States Government while he was in Colombia and he was brought back by the Government, not his actions.  He comes back to the United States and is working with the Government.  Now, granted, he did commit a new crime, which he pled guilty to, in which this Court has found true and has revoked his supervised release.  But I guess what I point out to the Court, it's kind of a unique situation where he was brought here by the United States Government and certainly has been found guilty of that crime, but would point out and suggest to the Court that's a mitigating factor.

The other point is, with the sentence being reduced, there may have been some confusion regarding the supervised release that could also – I know the Court has

found that Mr. Caicedo was on supervised release, but would request the Court to consider that in mitigating.

And finally, he's received a 151 month sentence from Judge Hoyt on the underlying offense, and 151 months is a long, long time. And because of that, we would request that the Court give a concurrent sentence on whatever sentence that Court revokes the supervised release and request that be a 12-month sentence to run concurrent with the 151-month sentence that Mr. Caicedo is in custody here for today.

The Court: Ms. Vara:

Ms. Vara: Your Honor, you have kind of the other edge of that sword that Mr. Barnett was so eloquently referring to regarding the FBI bringing Mr. Caicedo back and he's been cooperating in the Colorado case. And when he got brought back to work with the FBI, the other edge of the sword is he's double-dipping. He's playing like he's a good guy, working with the FBI, providing them information, and at the same time he's picking up money in May of 1998, drug proceeds that were acknowledged by all the defendants. All the defendants in that case pled guilty in Judge Hoyt's Court, and it was a little bit under $500,000 in drug proceeds. He neglected to tell Mr. Gutierrez of the FBI about that money pickup.

Initially, he neglected to tell Mr. Gutierrez that he also had seven kilos of cocaine in his house on June [ ], 1998, when he had the opportunity to do so. Because right before he was arrested by the DEA group that was working the Nunez case, he was meeting with Mr. Gutierrez in the Houston area supposedly for a debriefing, and this is the first time that Mr. Gutierrez had ever heard the name Nunez. No mention of the money pickup that had happened a month before, no mention of the fact that he had received, within a day or two before the June 5th arrest of Mr. Caicedo.

Mr. Barnett: I'm going to object to arguing things not before this Court.

The Court: All right, sustained.

Ms. Vara: I move to reopen. I'll put my agent on to put those facts into evidence or proffer them. Mr. Barnett had full discovery in the case. We have wire intercepts that were fully disclosed. The evidence is there. I'll put my agent on.

The Court: I'll take judicial notice of the fact that there was substantial evidence that Mr. Caicedo was actively involved in drug trafficking at the same time he was working as an informant, so I don't think we need to go into all the details. I don't think it's necessary.

Ms. Vara:  You have someone like that, though, who is begging for mercy, the low end of the Guidelines on supervised release revocation; and clearly, his behavior does not warrant that.  I'm sure this Court has seen cases in which the low end of the Guidelines– when a person receives 151 months, which was the low end of the Guidelines on the drug case that he pled guilty to.

I would urge the Court to, at the very least, give him 18 months consecutive to the 151 months.  And certainly, under the Sentencing Guidelines for a 1.3, the Court has the authority under the Guidelines to upward depart should they so find, given the facts as articulated in the application notice, for instance, that this defendant received a prior benefit and consideration under a 5K in Colorado, in which he was cooperating and tried to continue that cooperation at the same time committing offenses against the United States.

Also, that's why I went over with Mr. Gerlich, you have three other law violations that occurred in Harris County within a year, '96 and '97, that he's been convicted of.  So there are clearly things that the Court can consider for an upward departure that would justify an upward departure under the application notes.  The criminal history category does not adequately address his criminal behavior either from the prior criminal history category or the one that was assessed during the Pre-Sentence Report two months ago.

So I would urge the Court to, at the very least, assess an 18 month consecutive term and consider an upward departure as the Court could deem appropriate.

The Court:  Mr. Caicedo, anything you would like to say before I pronounce sentence?  Or Mr. Barnett, you want to say something   first?

Mr. Barnett:  If I could have a moment with Mr. Caicedo.

                              *                              *

Mr. Barnett:  No, your Honor, Mr. Caicedo is not going to make a statement to the court.

The Court:  He's not?  You don't wish to say anything?

Defendant Caicedo:  No, ma'am.

The Court:  All right.  I think that if I don't assess the high end of this range, it will be another instance in which Mr. Caicedo has gotten away with all of the leniency that the Federal Courts can muster.  He seems to have taken advantage of everything he could, which is certainly his right to do, but then he's abused that advantage by

committing crimes at the same time he's pretending to be helpful to the authorities in trying to get other people who were involved in drug activities and drug trafficking.

So, although he says he was confused about supervised release, I find that highly unlikely.  But even if he were confused, he's certainly not being brought before me today for revocation because he didn't show up at the probation office.  He's being brought in here because of violating the law.  So, I mean, I think the judge in Denver was quite lenient with him and, certainly, he served very little time for this sentence in Colorado.

So I think that the only just thing for me to do is to impose a sentence at the high end of this sentencing range, and I impose a sentence of 18 months, to be served consecutive to the 151 month sentence imposed by Judge Hoyt in the underlying case–not the underlying case, but in the other case.  (Document No. 19, pp 4-24).

The transcript of Caicedo's revocation hearing clearly shows that he was aware of the factual underpinning of his claims since 1999. The record shows that Judge Harmon expanded the revocation hearing to an evidentiary hearing so that the record would be clear concerning when Caicedo's supervised release term began, and what was the significance of his case being transferred to the Southern District of Texas, Houston Division.

Moreover, this is not Caicedo's first attempt to bring the instant claims relating to his supervised release.  For instance, attached to Caicedo's response to the Government's Motion to Dismiss was a docket sheet from his criminal proceeding in the United States  District Court for the District of Colorado.  The docket sheet showed that Caicedo on August 29, 2008,  filed a § 2255 motion, in which he raised a claim of ineffective assistance of counsel relating to his supervised release term:

Mr. Caicedo raises a claim of ineffective assistance of trial counsel in the instant action.  He asserts that this Court and his trial counsel failed to inform him that the five-year term of supervised release was part of his reduced sentence and would apply to him even if he returned to the United States after his deportation.  He further contends that when he returned to the United States he believed that he was subject to a special parole granted by the United States government but not to the five-year

22

supervised release that was entered originally in the instant criminal case.  Movant also asserts that his counsel in the revocation proceeding in the Southern District of Texas as ineffective in not contesting the transfer of his criminal case to the Southern District and in not challenging the imposition of his five-year supervised release.

The Court denied Caicedo's § 2255 motion as time-barred.  The Court wrote:

> Upon review of this Court's Docket in Case No. 91-Cr-00355-LTB, I find that Mr. Caicedo first communicated with this Court on October 19, 2006, inquiring about the sentencing transcripts.  I find that as early as 1999, when his sentence was revoked in this criminal case, and he was resentenced to eighteen months of incarceration, he was aware of the effects the supervised release had on his continuing incarceration. He, however, waited over seven years to seek any information from this Court regarding his original sentence and his May 26, 1993, resentencing and nine years to file the instant § 2255 Motion.

In sum, Caicedo has failed to demonstrate either extraordinary circumstances or due diligence that would warrant equitable tolling and his § 2255 motion is therefore untimely.  Even assuming that Caicedo had timely filed his § 2255 motion, he is not entitled to relief on his claims.  With respect to his contention that the reduction of sentence from 51 months to 25 months also eliminated his term of supervised release, the record shows that the Rule 35 motion had no impact on his supervised release which survived the granting of that motion.  *See*  Transcript of Revocation Hearing, Document No. 14, p. 4, 17-18); *United States v. Booth,* 551 F.3d 535 (6th Cir. 2009); *United States v. Spallone*, 399 F.3d 415, 425 (2nd Cir. 2005).  Moreover, to the extent that Caicedo suggests that his counsel was ineffective because he did not argue that he was not on supervised release, the record shows otherwise.  Counsel made all of the arguments urged by Caicedo herein and thoroughly cross examined the probation officer.

### III.  Conclusion and Recommendation

Based on the foregoing, and the conclusion that Caicedo's § 2255 motion was not timely filed, and that equitable tolling is not available, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 21) be GRANTED, that Movant Caicedo's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 14) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 1st  day of July, 2009.

Frances H. Stacy
United States Magistrate Judge